MERCHANTS NATIONAL BANK OF FARGO, NORTH DA-
KOTA, Respondent, v. CITY OF DEVILS LAKE, Appellant.

(173 N. W. 748.)

**Municipal corporations — public improvements — liability for warrants.**

In an action upon warrants issued by the city of Devils Lake in payment of
work done in grading streets, it is *held*, for reasons stated in the opinion, that
the city is liable generally for the amount due on the warrants.

Opinion filed July 1, 1919.

From a judgment of the District Court of Ramsey County, *Buttz,*
J., defendant appeals.

Affirmed.

*Fred J. Traynor,* City Attorney, and *Mack V. Traynor,* Assistant
City Attorney, for appellant.

Wilson v. Aberdeen, 19 Wash. 89, 52 Pac. 524. In this case it is
held that a city cannot be rendered liable generally upon warrants
drawn against a special fund for the payment of a street improvement
even though the remedy of a street assessment proceeding is not
longer available. The court says: "The obligation rested upon the
warrant holders to compel the officers of the city to proceed with the
collection of the assessments, and if they saw fit to allow their remedy
to become lost through a failure to compel an enforcement of the
assessment proceedings, they, and not the general taxpayers, must
bear the consequences. They were bound to take notice of what was
being done in the premises, or of any failure to proceed. If the prop-
erty was exhausted, and proves to be inadequate, that loss cannot be
imposed upon the general taxpayers." See also American Sav. Bank
v. Spokane, 47 Pac. 1103; 49 Pac. 542.

28 Cyc. 1571: "Where municipal warrants are payable out of a
particular fund, payment thereof is rightfully refused when there is
no money belonging to such fund in the municipal treasury. And
warrants issued by a city for public improvements, to be paid out
of a special fund, cannot be collected against the city generally, al-
though the remedy to collect from the special fund has been lost."

See also Affeld v. Detroit (Mich.) 71 N. W. 151; North Western Lumber Co. v. Aberdeen (Wash.) 60 Pac. 1115. And bearing incidentally on the same subject: Price v. Fargo, 24 N. D. 440; State v. Murphy, 20 N. D. 427.

*Pollock & Pollock,* for respondent.

The city council at the time this grading was done, warrants issued, and indebtedness incurred, had power "to lay out, establish, open, alter, widen, grade, pave or otherwise improve streets, alleys, avenues, . . . at the expense of the whole city." Sess. Laws 1887, subd. 7, art. 15, p. 190, chap. 73, Rev. Codes 1895 and 1899, subd. 7, § 2148; Sess. Laws 1897, chap. 102 p. 160; Sess. Laws 1899, chap. 40, p. 38; Sess. Laws 1899, chap. 42, p. 51.

Such city could borrow money on the credit of the corporation to meet the expenses of such improvements. It could issue bonds, if authorized so to do by the legal voters, and could issue other bonds to supply means to meet maturing bonds or for the consolidation or funding of the same. Sess. Laws 1887, subds. 5 and 6, art. 4, chap. 73; Rev. Codes 1895 and 1899, § 2148, as amended by Sess. Laws 1899, chap. 40 p. 38.

Such city was authorized to provide for the outlay and expenses of making such improvements by special assessments upon the adjoining property benefited or supposed to be benefited thereby. Sess. Laws 1887, art. 4, pp. 217–288, chap. 73; Rev. Codes 1895, §§ 2265–2314. As amended by Sess. Laws 1897, chap. 41, p. 47; Sess. Laws 1897, chap. 102, p. 160; Sess. Laws 1899, chap. 40, p. 38; Sess. Laws 1899, chap. 42, p. 51.

CHRISTIANSON, Ch. J. Plaintiff brought this action to recover the amount due on certain warrants issued by the city of Devils Lake to one Thomas Young for grading certain streets. The warrants were thereafter purchased by and assigned to the plaintiff. The case was tried to the court without a jury, and resulted in a general judgment for the plaintiff, and defendant has appealed.

There is no controversy about the facts. It appears that some time prior to September, 1909, one Thomas Young graded some streets for the defendant city. The evidence does not show the terms of the agreement under which the work was performed. In payment of

such work the defendant city issued certain city warrants, drawn upon what is denominated the grading special assessment fund. There is also evidence tending to show that the city authorities levied certain special assessments against the lots abutting upon the streets graded, but the record of such proceedings is not in evidence. It also appears that, some years before as well as later, the city had caused other streets to be graded, and that in all four different grading projects had been undertaken. Some of the projects were in wholly different parts of the city and in no manner connected with one another. For these projects, also, special assessments were levied. It is conceded that the city authorities did not create improvement districts for the different projects, nor is it shown that the city authorities created the city into one improvement district. It is admitted that no attempt was made to segregate the moneys collected from the special assessments levied for the different projects, or to apply the moneys received from such assessments to the retirement of the warrants issued for the particular improvement for which the taxes were levied. The trial court found that some of the special assessments levied for the grading performed by Thomas Young were paid and collected, but the proceeds therefrom were placed in a general grading fund and commingled and mixed with other taxes and funds collected for other grading jobs and work done in other and various places in said defendant city, and no separate or specific fund or account was kept for the proceeds or taxes collected for this particular job or works, and other warrants issued for other grading jobs were from time to time paid from such general grading fund without keeping any record or account of receipts and disbursements with or for each or any particular job of grading. This finding is admitted to be correct. It is conceded that the warrants in question were presented for payment, and that they have not been paid in accordance with their terms. It also appears that the City Commission adopted a resolution in effect directing the city attorney to admit liability upon the warrants in suit, and permit judgment to be rendered in favor of the plaintiff, and that this position was receded from at the instance of certain taxpayers. It further appears that practically all of the lots benefited by the grading done by Young were bid in by the defendant city at the tax sale held in December, 1911; that since that

time said lots have been withdrawn from the tax lists, and no taxes or assessments of any kind extended against them, and that defendant had not perfected its tax title or made any effort to dispose of the lots.

The question of the general liability of a city for the payment of obligations payable from special assessments is one upon which there is much conflict in the authorities. See Hamilton, Special Assessments, §§ 671 *et seq.;* Dill. Mun. Corp. 5th ed. §§ 827 *et seq.;* Page & J. Taxn. by Assessment, §§ 1498–1526. We do not deem it necessary to enter into any extended discussion of the subject in this case. While certain general rules have been formulated, the determinations generally are controlled by the legislation, the contract, and the facts involved in each particular case.

Our statutes clearly contemplate that before the city authorities undertake any improvement to be paid for by special assessment, they must create an improvement district. Comp. Laws 1913, §§ 3698 *et seq.* The creation of such district has been held by this court to be a jurisdictional prerequisite. Kvello v. Lisbon, 38 N. D. 71, 164 N. W. 305. The city authorities have a wide discretion in determining the area of a proposed improvement district; but it is contemplated that they should exercise judgment and discretion in so doing. Comp. Laws 1913, §§ 3699, 3700. As already stated there is nothing to show that the city council of the defendant city ever created any improvement district whatever. It is undisputed that they did not deem the moneys received from assessments levied against property benefited by the grading done by Young applicable to the payment of warrants issued to him alone, but placed such moneys in a general grading fund, and applied them indiscriminately in payment of warrants drawn upon such fund. There is no showing that there was any provision in the agreement under which Young performed his work restricting the city's liability. The warrants contain no such restriction. Nor do the warrants pretend to be drawn against the funds of any specified improvement district as the statute provides that such warrants shall be drawn. Comp. Laws 1913, § 3711. The city council is given general authority over the streets of the city. Comp. Laws 1913, § 3599, subds. 7–12. The council may, when occasion warrants, create an improvement district for street grading,

and raise the necessary funds by special assessments against the property benefited. It is not necessary, however, in all instances, to pay for street grading by special assessments. The city council may also expend moneys raised by general taxation for that purpose. In our opinion the facts in this case warrant the conclusion drawn by the trial court, viz., that the defendant city is liable generally upon the warrants in controversy.

Judgment affirmed.

GRACE, J. I concur in the result.