# Fidelity & Casualty Co. of New York v. Bass.

(Decided Feb. 20, 1934.)

WHEELER, WHEELER & SHELBOURNE for appellant.
J. D. MOCQUOT and W. A. BERRY for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellee, Dr. W. J. Bass, filed this suit in the

McCracken circuit court against the appellant, Fidelity & Casualty Insurance Company, to recover on an accident insurance policy, alleging that as a result of an automobile accident, which occurred on the 28th day of October, 1931, he sustained certain injuries which prevented him from performing each and every duty pertaining to his occupation; that his occupation was that of a physician and surgeon; that the injury received occurred while he was engaged in such occupation. The policy sued on respecting the insuring clauses is as follows:

"[a] Total disability that immediately [as respects the injury] and continuously prevents the assured from performing each and every duty pertaining to his occupation."

"[b] If the assured suffers partial disability the Company will pay for a period not exceeding 26 consecutive weeks $37.50 per week for that portion of the said period throughout which the assured suffers total disability for three quarters of his business time."

There was also a double indemnity provision of the policy whereby the company would pay double indemnity if an injury was received under certain conditions. Appellee's injury comes within the double indemnity provision of the policy which entitled him to $100 per week for total disability, and three-fourths of the amount due for total disability on the account of partial disability following the total disability, which would be $75 per week for partial disability, limited, however, to 26 weeks. It is alleged in his petition that he had been paid $100 per week from the date of the accident to June 1, 1932, and thereafter he had been paid the sum of $75 per week until December 1, 1932, but avers that this was not the full amount due him under the policy and that he was entitled to $100 per week for the period of 26 weeks between June 1, 1932, and December 1, 1932, and asked that he recover of appellant an additional $25 per week, $650, for this period and that he recover the sum of $100 per week from December 1, 1932, to March 22, 1933, time of filing the action, and prays judgment for $2,350.

The controversy respecting the 26-week period from June 1, 1932, to December 1, 1932, arose out of an alleged tentative agreement between Dr. Bass and one

Bill Hummel, agent for the appellant company. About May 27, 1932, Hummel told Dr. Bass that he had been instructed to ask him whether or not he would take 75 per cent. of the maximum amount of $100 and try to take up his practice and if he could not do it, they would pay the full amount; and Dr. Bass said: "I don't want to be hard on the company, I am willing to try. I would much prefer having the use of my arm." Pursuant to this conversation Dr. Bass accepted $75 per week for the next ensuing 26 weeks, ending about December 1, 1932. It is argued for Dr. Bass that his acceptance of the various vouchers and sums of money on a basis of $75 per week should go as a credit only on the $100 per week and he is not precluded by such acceptance. As a general rule, checks and receipts are not conclusive of payment in full of an obligation and may be accepted by the parties entitled thereto as a credit only. This rule prevails especially where there is no agreement or understanding between the parties. In the instant case the appellee accepted $75 per week pursuant to his agreement with the agent of the company.

It is argued for appellant that the evidence relating to the agreement with Hummel to the effect that the $75 per week agreement with Dr. Bass was incompetent because it would be in effect a modification or extension of the policy which the agent Hummel had no right or authority to do and, therefore, not binding on the company. This agreement could not be construed as a modification of the insurance contract. It is evidential only in its nature, relating to the nature of his injuries and compensation therefor. Dr. Bass alleged that he had not been paid according to the terms of the policy, which the company denied and pleaded payment. The agreement between Dr. Bass and the company's agent was admissible as evidence on this issue. Dr. Bass testified that Hummel told him that his company, the appellant, asked him to make this temporary arrangement with him if he could do so and this evidence is uncontradicted. First, the company denies its agent's authority to bind it by this arrangement. It accepted and carried out the arrangement as if the agent had the authority to make it; second, the duty rested on the company both to plead and prove the limitation of its agent's authority and notice thereof to Dr. Bass, which it failed to do. New York Canners v. Rucker, 238 Ky. 204, 37 S. W. (2d) 31. Dr. Bass further testified that following

this agreement he tried to resume his practice but found that he was unable to do so and notified the company to that effect within about 4 to 6 weeks after making the agreement. It then became his duty to refuse payment on the basis of partial disability or give such receipts or statements therefor as would indicate the purpose for which he did receive them. But this he failed to do and continued to receive pay on the basis of partial disability for which he signed proof of claims and vouchers expressly stating that it was for partial disability, until December 1, 1932, at which time appellant ceased paying him, claiming that it had paid him in full for the 26 weeks partial disability following the total disability and, therefore, had paid him all that he was entitled to under the terms of the policy.

It is our conclusion that the agreement between Dr. Bass and the agent of the company was tentative only respecting the question whether his disability was total or partial, and, the same constructions would be applied to the payment received during this period had he refused same or not acquiesced therein after he learned that he was unable to resume his practice, which was, according to his own testimony, within 4 to 6 weeks after the agreement was entered into. Had he then refused further payment on the basis of partial disability, his recovery for total disability would have been limited only to the 4 or 6-week period. But inasmuch as he continued to receive payment for partial disability which was in accordance with not only the agreement but with the proofs of claims made and signed by him and presented to the company, he thereby extended the partial disability agreement so long as he continued to receive pay on that basis, and his conduct and actions in so doing constituted a waiver of compensation for total disability. In the case of Justice v. Burgess, 244 Ky. 774, 52 S. W. (2d) 720, 723, a waiver is defined thus:

"A 'waiver' is the voluntary surrender or relinquishment of a known legal right or intentionally doing an act inconsistent with claiming it,"

and citing Bell County v. Minton, 239 Ky. 840, 40 S. W. (2d) 379; United States Fidelity & Guaranty Co. v. Miller, 237 Ky. 43, 34 S. W. (2d) 938, 76 A. L. R. 12.

It is our conclusion that he is bound by this mode of settlement for that period and is precluded from recovering any additional sum therefor. But inasmuch

250

as it is shown that this agreement was conditioned upon whether or not Dr. Bass could resume his practice which was for the purpose of determining whether his disability was total or partial, and further shown, according to the evidence, that his disability is total, it is our view that he is entitled to recover for total disability so long as such disability has or shall continue according to the terms of the policy.

It follows then that he was entitled to recover for total disability from December 1, 1932, to the date of filing the action and entitled to the $1,700 sued for for this period; but not entitled to the additional $650 for the 26-week period between June 1, and December 1, 1932.

The further point is made for appellant that the proof is insufficient to sustain the jury's finding that Dr. Bass' disability was total. Dr. Bass testified that his disability was total; that he had tried to resume his practice but was unable to do so. A number of other doctors examined Dr. Bass, a part of whom had treated him from the date of his injury, and testified that his disability was total. This evidence is contradicted only by one other doctor who testified for appellant, who stated that in his opinion Dr. Bass' disability is only partial. In view of the evidence adduced in behalf of the respective parties, we are unable to say that the finding of the jury was contrary to the evidence.

The rule that the courts will not disturb the verdict of a jury on a finding of fact unless it is flagrantly against the weight of the evidence, is to well known to require citation of authority.

There is some complaint about the instructions but it relates to the issues involving the 26-week period from June 1, to December 1, 1932. The conclusions we have reached make it unnecessary to express an opinion on the instructions.

For reasons indicated the judgment is reversed as to the $650 additional compensation from June 1, to December 1, 1932, and affirmed as to the $1,700 from December 1, to the filing of the action, and remanded for proceedings consistent with this opinion.